UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| RONALD BILLIOT,<br>Plaintiff | CIVIL ACTION |
| VERSUS | NO. 16-16207 |
| PTL, LLC, ET AL.,<br>Defendants | SECTION: "E" (1) |

## ORDER AND REASONS

Plaintiff Ronald Billiot alleges he sustained injuries while he was a crew member aboard the M/V ANGEL ANNIE, a commercial fishing vessel.[1] Before the Court is Plaintiff's motion for partial summary judgment.[2] Plaintiff seeks a judgment that the vessel was unseaworthy for a period of at least four months due to exhaust leaks that allegedly polluted the air in the crew's quarters.[3] For the reasons that follow, Plaintiff's motion for partial summary judgment is **DENIED**.

## BACKGROUND

Plaintiff alleges that on or about September 25, 2015, while in the course of his duties as captain onboard the M/V ANGEL ANNIE, he collapsed from carbon monoxide poisoning in the vessel's kitchen.[4] Plaintiff further alleges that as he collapsed, his head struck the vessel's refrigerator, causing injuries to his head and neck.[5] Because he was out at sea, Plaintiff alleges he was unable to seek immediate medical attention.[6] Plaintiff

---

[1] R. Doc. 1. The suit was initially brought by Mr. Billiot and the deckhand aboard the vessel, Ralph Pellgrin. Mr. Pellgrin subsequently settled his claims with the Defendants, and the Court granted the parties' joint motion to dismiss his claims on February 6, 2018. *See* R. Doc. 64.
[2] R. Doc. 70.
[3] *Id.* at 2.
[4] R. Doc. 1 at ¶¶ 6-7.
[5] *Id.* at ¶ 7.
[6] *Id.*

1

alleges a second incident occurred on November 20, 2015, during which he collapsed from carbon monoxide poisoning in the vessel's wheelhouse.[7]

Plaintiff alleges the carbon monoxide poisoning resulted from leaks in the vessel's exhaust system that caused noxious fumes to spread through the vessel, including the crew's quarters.[8] Plaintiff alleges the Defendants were aware of the leak, but failed to properly correct the problem.[9]

On November 9, 2016, Plaintiff filed a Seaman Complaint in this Court, asserting claims of Jones Act negligence and unseaworthiness against multiple defendants, including the vessel owner, PTL, L.L.C.[10] The vessel itself and the vessel's insurer, XL Insurance Company, were named in a supplemental and amending complaint.[11]

In this motion, Plaintiff seeks a judgment that the M/V ANGEL ANNIE was unseaworthy for a period of at least four months.[12] Plaintiff argues that the undisputed facts show that the M/V ANGEL ANNIE suffered from exhaust leaks between June 2015 and September 2016. Because of these exhaust leaks, Plaintiff asserts "the air in the working and living areas of the vessel was of poor quality . . . with the contamination resulting from the exhaust leaks being severe enough to discolor the walls of the rooms where crew members lived and worked."[13]

In response, Defendants aver that genuine disputes of material fact preclude summary judgment.[14] Defendants assert that genuine disputes exist regarding the

---

[7] *Id.*
[8] *Id.* at ¶ 8.
[9] R. Doc. 1.
[10] The Court dismissed Plaintiffs' claims against Defendants Angel Annie, Inc., Jerry Smiko, Roxanne, Sevin, O'Neil Sevin, and Symantha Sevin. *See* R. Doc. 17.
[11] R. Doc. 25.
[12] R. Doc. 70-8 at 1.
[13] *Id.* at 6.
[14] R. Doc. 73.

severity of the leak, the amount of time that Plaintiff was exposed to exhaust, and the claim that the air quality throughout the vessel was "poor."[15]

## **LEGAL STANDARD**

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[16] "An issue is material if its resolution could affect the outcome of the action."[17] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[18] All reasonable inferences are drawn in favor of the nonmoving party.[19] There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the nonmoving party, no reasonable trier of fact could find for the nonmoving party, thus entitling the moving party to judgment as a matter of law.[20]

If the dispositive issue is one on which the moving party will bear the burden of persuasion at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"[21] If the moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden of production then shifts to the nonmoving

---

[15] R. Doc. 73 at 3. Defendants devote much of their memorandum in opposition to attacking the credibility of Plaintiff's allegations and the causal connection between the alleged injuries and the conditions onboard the vessel. *See id.* Plaintiff is not moving for complete summary judgment on his unseaworthiness claim, however, but only on the issue of the seaworthiness of the vessel itself. As a result, Plaintiff need not provide uncontroverted facts establishing causation to succeed in this motion.
[16] FED. R. CIV. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).
[17] *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).
[18] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).
[19] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[20] *Smith v. Amedisys, Inc.*, 298 F.3d 434, 440 (5th Cir. 2002).
[21] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263–64 (5th Cir. 1991) (quoting *Golden Rule Ins. Co. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)).

party to direct the Court's attention to something in the pleadings or other evidence in the record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[22]

If the dispositive issue is one on which the nonmoving party will bear the burden of persuasion at trial, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the nonmovant's claim, or (2) demonstrating there is no evidence in the record to establish an essential element of the nonmovant's claim.[23] When proceeding under the first option, if the nonmoving party cannot muster sufficient evidence to dispute the movant's contention that there are no disputed facts, a trial would be useless, and the moving party is entitled to summary judgment as a matter of law.[24] When, however, the movant is proceeding under the second option and is seeking summary judgment on the ground that the nonmovant has no evidence to establish an essential element of the claim, the nonmoving party may defeat a motion for summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party."[25] Under either scenario, the burden then shifts back to the movant to demonstrate the inadequacy of the evidence relied upon by the nonmovant.[26] If the movant meets this

---

[22] *Celotex*, 477 U.S. at 322–24.
[23] *Id.* at 331–32 (Brennan, J., dissenting); *see also St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987) (citing Justice Brennan's statement of the summary judgment standard in *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986), and requiring the movants to submit affirmative evidence to negate an essential element of the nonmovant's claim or, alternatively, demonstrate the nonmovant's evidence is insufficient to establish an essential element); *Fano v. O'Neill*, 806 F.2d 1262, 1266 (citing Justice Brennan's dissent in *Celotex*, and requiring the movant to make an affirmative presentation to negate the nonmovant's claims on summary judgment); 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE §2727.1 (2016) ("Although the Court issued a five-to-four decision, the majority and dissent both agreed as to how the summary-judgment burden of proof operates; they disagreed as to how the standard was applied to the facts of the case." (internal citations omitted)).
[24] *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288–89 (1980); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986).
[25] *Celotex*, 477 U.S. at 332–33.
[26] *Id.*

burden, "the burden of production shifts [back again] to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)."[27] "Summary judgment should be granted if the nonmoving party fails to respond in one or more of these ways, or if, after the nonmoving party responds, the court determines that the moving party has met its ultimate burden of persuading the court that there is no genuine issue of material fact for trial."[28]

"[U]nsubstantiated assertions are not competent summary judgment evidence. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports the claim. 'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'"[29]

## **ANALYSIS**

Unlike a Jones Act claim, a claim for unseaworthiness is predicated "without regard to fault or the use of due care," and "a shipowner has an absolute nondelegable duty to provide a seaworthy vessel."[30] For a vessel to be found unseaworthy, "an injured seaman must prove that the owner has failed to provide a vessel, including her equipment and crew, which is reasonably fit and safe for the purposes for which it is to be used."[31]

---

[27] *Celotex*, 477 U.S. at 332–33, 333 n.3.
[28] *Id.*; *see also First National Bank of Arizona*, 391 U.S at 289.
[29] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 324; *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) and quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).
[30] *Brister v. A.W.I., Inc.*, 946 F.2d 350, 355 (5th Cir. 1991).
[31] *Moore v. Omega Protein, Inc.*, 459 F. App'x 339, 341 (5th Cir. 2012) (quoting *Jackson v. OMI Corp.*, 245 F.3d 525, 527 (5th Cir. 2001)).

However, a ship's owner "is not obligated to furnish an accident-free ship."[32] To succeed on an unseaworthiness claim, the seaman must also establish a causal connection between the injury and the claimed unseaworthy condition.[33]

"A vessel's condition of unseaworthiness might arise from any number of circumstances."[34] A vessel may be unseaworthy because "[h]er gear might be defective, her appurtenances in disrepair, [or] her crew unfit."[35] A vessel may also be unseaworthy because of "an unsafe method of work."[36]

Plaintiff seeks a judgment that the M/V ANGEL ANNIE was unseaworthy due to a series of leaks in the exhaust system that rendered the air quality on the vessel dangerously poor. Plaintiff does not cite to any cases in which poor air quality in a vessel renders the vessel unseaworthy.[37] Nevertheless, the list of possible unseaworthy conditions is a long one, and includes the use of defective electrical equipment,[38] the presence of hazardous materials on board,[39] and the failure to provide[40] or instruct in the use of[41] adequate safety equipment. Furthermore, the Fifth Circuit has found on several occasions that a vessel is unseaworthy when onboard conditions result in carbon

---

[32] *Id.*
[33] *Id.*
[34] *Usner v. Luckenbach Overseas Corp.*, 400 U.S. 494, 499 (1971).
[35] *Id. See also Bonmarito v. Penrod Drilling Corp.*, 929 F.2d 186, 189-191 (5th Cir. 1991).
[36] *Johnson v. Offshore Express, Inc.*, 845 F.2d 1347, 1354–55 (5th Cir. 1988*); see also Phillips v. W. Co. of N. Am.*, 953 F.2d 923, 928 (5th Cir. 1992) (noting that "an unsafe method of work may also render a vessel unseaworthy").
[37] Plaintiff cites only to *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620 (5th Cir. 1999). Although that case involved allegations that a casino ship was unseaworthy due to the second-hand cigarette smoke on board, this question was totally unaddressed in the Fifth Circuit's opinion, which dealt only with class certification.
[38] *Sojak v. Hudson Waterways Corp.*, 590 F.2d 53 (2d Cir. 1978) (vessel unseaworthy when generator inexplicably explodes).
[39] *Austin v. Unarco Industries, Inc.*, 705 F.2d 1 (1st Cir. 1983).
[40] *Taylor v. TECO Barge Line, Inc.*, 517 F.3d 372 (6th Cir. 2008).
[41] *Deal v. A.P. Bell Fish Co.*, 674 F.2d 438, 442 (5th Cir. 1982) (ship is unseaworthy when inexperienced seaman is not instructed on the proper use of life preservers).

monoxide poisoning.[42] Therefore, the Court assumes for the purposes of this motion that a defective exhaust system could pollute the air in a vessel's cabin such that the vessel is not "reasonably fit and safe for the purposes for which it is to be used."

In support of its motion, Plaintiff offers the following undisputed facts. The vessel M/V ANGEL ANNIE had an engine room containing an engine, a generator, and a system of exhaust pipes intended to convey exhaust from the engine and generator out of the engine room and away from the area where crew members worked and lived.[43] Between June 2015 and September 2016, the exhaust system leaked.[44] The layout of the vessel and the placement of the engine room would have allowed escaping engine exhaust to reach the engine room, where crew members worked, and into other areas of the vessel.[45] During this time, some walls in the interior of the vessel became stained with soot.[46]

Plaintiff asserts that these undisputed facts entitle him to summary judgment that the M/V ANGEL ANNIE was unseaworthy for a period of at least four months in 2015 and 2016 due to poor air quality. Plaintiff contends that the deposition testimony of Ted Portier, corporate representative of PTL, L.L.C., indicates that "the leaks were in existence

---

[42] *See, e.g., James v. Sea-Land Service, Inc.*, 456 F.2d 221 (5th Cir. 1972); *Carey v. Lykes Bros. S.S. Co.*, 455 F.2d 1192 (5th Cir. 1972).
[43] R. Doc. 70-1 at ¶ 3; R. Doc. 77-3 at ¶ 3.
[44] R. Doc. 70-1 at ¶ 4; R. Doc. 77-3 at ¶ 4. Defendants dispute Plaintiff's characterization of the exhaust leaks, and further allege that Plaintiff intentionally drilled holes in the exhaust system in order to create the alleged leaks. Nevertheless, the deposition testimony cited by Plaintiff plainly shows that there were exhaust leaks "on the main engine . . . right around the turbo," and a second leak "on the generator." R. Doc. 70-2 at 12.
[45] R. Doc. 70-1 at ¶ 5; R. Doc. 77-3 at ¶. Defendants dispute this fact, but fail to provide evidentiary support for their position. The deposition testimony of Ted Portier indicates that exhaust leaks from the engine area would have reached other parts of the vessel. "A: All right. Now is there any way that the fumes from the engine room can get into the galley; is there any opening between the engine room and the galley where fumes can escape and get into the galley? A. It could get into the - - from the front, from the pilot house, from underneath. There's holes all over underneath there. Q. Okay. A. It could come in there, anything that's in the engine room."
[46] R. Doc. 70-1 at ¶ 7. R. Doc. 77-3 at ¶ 7. Defendants deny the fact as asserted by the Plaintiff, but do not provide any evidence to rebut the fact that soot stains appeared on the walls of the vessel.

for at least four months between June 2015 and September 2016."[47] Plaintiff also offers a single unauthenticated photograph of what appear to be stains on the walls of the vessel.[48]

As Defendant correctly argues, however, the cited testimony does not fully support Plaintiff's claim:

> Q: All right. And I may have asked you this, and I apologize: Do you recall how many months the exhaust leak existed?
> A: I don't really know exactly how long. I know it could have been five, six, seven trips. I don't know. It might have been longer than that. I can't tell you. Because they stay out almost a month every time they'd go out.
> Q: I see. And how long are they off before they go back on another trip?
> A: Them, they wanted—as soon as I'd fix it, they were ready to go back.
> Q: All right. So maybe just a couple of days.
> A: A couple, two, three days, and they was going back again. [49]

At most, Mr. Portier's testimony shows that the Plaintiff made several voyages on the M/V ANGEL ANNIE during this period, that these voyages would last for several weeks at a time, and there was only a short break between voyages. The testimony says nothing about how long into the voyage the leaks might have started, how severe the leaks may have been, or to what extent the leaks polluted the vessel's air. Further, Defendant emphasizes Mr. Portier's testimony that "I don't really know exactly how long" the leaks existed[50], and that Mr. Portier promptly repaired the leaks when they were reported.[51] Defendants have thus created disputes of material fact regarding how long the leaks existed, the severity of the leaks, and the effect of the leaks on the vessel's air quality generally.[52] Accordingly,

---

[47] R. Doc. 70-1 at 2.
[48] R. Doc. 70-7.
[49] R. Doc. 70-3 at 31-32.
[50] *Id.* at 31.
[51] R. Doc. 73-3 at 1-2.
[52] Plaintiff also states that the engine exhaust "was contaminated with soot in sufficient quantities that soot stains appeared around the air ducts," offering a photograph of the alleged soot stains as evidence.[52] Even assuming the photograph is valid summary judgment evidence, the photograph does not explain how long the exhaust leaks existed.

Plaintiff is not entitled to a judgment that the vessel was unseaworthy for four months due to its poor air quality.

To be clear, the exhaust leaks on the vessel may have created unseaworthy conditions. Even temporary conditions that make a vessel unfit can render the vessel unseaworthy.[53] Nevertheless, a vessel owner "is not obligated to furnish an accident-free ship."[54] Rather, the test is whether the vessel is "reasonably fit and safe for the purposes for which it is to be used." Because there are genuine disputes of material fact regarding how long the leaks existed, the severity of the leaks, and the effect of the leaks on the air quality on the vessel generally, Plaintiff is not entitled to summary judgment that the M/V ANGEL ANNIE was unseaworthy for a period of four months in 2015 and 2016 due to poor air quality.

## CONCLUSION

Accordingly,

Plaintiff's motion for partial summary judgment is **DENIED**.

**New Orleans, Louisiana, this 19th day of March, 2018.**

_____
**SUSIE MORGAN
UNITED STATES DISTRICT JUDGE**

---

[53] *See Mitchell v. Trawler Racer*, 362 U.S. 539 (1960) (a coating of fish slime on the ship's rail was a "transitory" but nonetheless unseaworthy condition of the vessel).
[54] *Park v. Stockstill Boat Rentals, Inc.,* 492 F.3d 600, 604 (5th Cir. 2007).